UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| JUN FU, | Case No. 23-cv-04327-LB |
| Plaintiff, | **AMENDED ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S REQUEST FOR SANCTIONS** |
| v. | |
| ROKID, INC., | |
| Defendant. | Re: ECF No. 60, 113 |

## INTRODUCTION

Rokid Inc. fired Mr. Fu in May 2023. This case is about why.

Mr. Fu alleges he was terminated for unlawful reasons including (1) questioning and/or refusing to engage in illegal activities, (2) using sick leave, and (3) having a disability. Mr. Fu brings claims for various employment law violations and failure to pay his 2022 bonus.

Rokid contends that Mr. Fu was terminated for permissible reasons and counterclaims for trade-secret misappropriation and defamation based on Mr. Fu's post-severance communications with current or prospective Rokid customers.

Mr. Fu moved for summary judgment on Rokid's trade-secret and defamation counterclaims. Rokid responds that any deficiencies in its evidence are due to spoliation by Mr. Fu and his counsel. It seeks sanctions including default judgment on its counterclaims, terminating sanctions,

AMENDED ORDER – No. 23-cv-04327-LB

and fees. The court denies the plaintiff's motion for summary judgment because disputes of fact and the need for discovery precludes it. The court grants the defendant's motion for sanctions in part: terminating sanctions are not warranted but the destruction of ESI makes a permissive inference instruction appropriate.

**STATEMENT**

Rokid makes augmented-reality glasses. In 2021, Rokid hired Mr. Fu as Vice President of Sales. Under Mr. Fu's employment contract, he could receive a $60,000 annual bonus subject to certain conditions.[1]

During Mr. Fu's employment at Rokid, the United States imposed sanctions restricting the provision of oil and gas technology to Russia. Mr. Fu became concerned that selling Rokid glasses to Russian distributors violated these rules and/or constituted smuggling. Mr. Fu expressed these concerns to his superiors and refused to participate in such sales.[2]

In January 2023, Mr. Fu received an "A" rating on his final performance evaluation.[3] On May 15, 2023, Mr. Fu went on medical leave. On May 25, Rokid fired him.[4]

On June 19, 2023, Rokid sent Mr. Fu a cease-and-desist letter and document-preservation notice.[5] The cease-and-desist letter concerned Mr. Fu's post-termination communications with Rokid's customers. Mr. Fu admits that he received the notice and discussed it with his attorney. On June 28, Mr. Fu's lawyer responded to the notice on behalf of Mr. Fu and provided a similar notice to Rokid, noting the obligation to preserve, amongst other things, ESI.[6]

---

[1] Offer letter – ECF No. 88-2 at 3; Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents. This amended order replaces "Rokid's customer" with "competitor" in the deposition excerpt in section 1.2.2.

[2] Mot. – ECF No. 64 at 15; Fu. Decl. – ECF No. 64-1 at 2 (¶¶ 3–5).

[3] Guan Dep. – ECF No. 89-7 at 10.

[4] *Id.* at 8.

[5] Rokid's Preservation Notice – ECF No. 113-5.

[6] Fu Dep. – ECF No. 112-2 at 52; Fu's Preservation Notice – ECF No. 113-7.

AMENDED ORDER – No. 23-cv-04327-LB        2

On August 17, 2023, Mr. Fu sued Rokid. Mr. Fu alleges that he was terminated for unlawful reasons including (1) questioning and/or refusing to engage in illegal activities, (2) using sick leave, and (3) having a disability. Mr. Fu brings claims for various employment law violations and breach of contract. Rokid removed the case to federal court, and then counterclaimed for trade secret misappropriation and defamation.[7]

Sometime in September or October — after the litigation had commenced — Mr. Fu decided to sell his phone.[8] He took screenshots of conversations with potential customers in the augmented-reality sector, wiped the remaining data by restoring the phone to default settings, and sold it. He did not create a backup or otherwise preserve the data.[9]

Mr. Fu was deposed twice. During his second deposition, Mr. Fu testified that, after leaving Rokid, he used instant messaging services and email to communicate with companies in the augmented-reality business.[10] Mr. Fu admitted that he did not preserve all such messages.[11]

# STANDARDS OF REVIEW

**1. Spoliation**

The standard for spoliation depends on the type of conduct challenged.

**1.1   Rule 37: ESI**

Courts may award sanctions if "electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." *Jones v. Riot Hosp. Grp. LLC*, 95 F.4th 730, 734-35 (9th Cir. 2024).

Dismissal is authorized if the spoliating party "acted with the intent to deprive another party of the information's use in the litigation" and lesser sanctions are insufficient to address the lost ESI.

---

[7] Notice of Removal – ECF No. 1; Answer – ECF No. 11.

[8] Fu Dep. – ECF No. 112-1 at 23.

[9] *Id.* at 23–24.

[10] Fu. Dep. – ECF No. 112-2 at 13–14, 24, 89–90, 92–94, 101, 122.

[11] *Id.* at 14, 28–29, 94–95, 101, 122–123.

*Id.* at 735. Intent to deprive means involving the willful destruction of evidence with the purpose of avoiding its discovery by an adverse party." *Id.* Evidence of intent may include the timing of destruction, affirmative steps taken to delete evidence, and selective preservation. *Id.*

### 1.2  Rule 37(b)(2)(A): Failure to Comply with Ordered Discovery

Sanctions may be imposed when a party "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A). The available sanctions include dismissal, but only where the court finds "willfulness, fault, or bad faith." *Dreith v. Nu Image, Inc.*, 648 F.3d 779, 787 (9th Cir. 2011); *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091 (9th Cir. 2007). To determine the appropriate sanction, courts consider (1) the public's interest in expeditious resolution of litigation, (2) the court's need to manage its dockets, (3) the risk of prejudice to the moving party, (4) the public policy favoring disposition of cases on their merits, and (5) the availability of less drastic sanctions. *Conn. Gen. Life Ins. Co.*, 482 F.3d at 1096.

## 2. Multiplication of Proceedings

Courts can sanction attorneys for unreasonable and vexatious multiplication of proceedings. 28 U.S.C. § 1927. This requires a finding of subjective bad faith, which can be shown by raising frivolous arguments. *Kohler v. Flava Enters., Inc.*, 779 F.3d 1016, 1020 (9th Cir. 2015).

## 3. Summary Judgment

The court must grant summary judgment where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Material facts are those that may affect the outcome of the case. *Id.* at 248. A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248–49.

The party moving for summary judgment has the initial burden of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party

must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'" (quoting *Celotex*, 477 U.S. at 325)). "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

If the moving party meets its initial burden, then the burden shifts to the nonmoving party to produce evidence supporting its claims or defenses. *Nissan*, 210 F.3d at 1103. "Once the moving party carries its initial burden, the adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but must provide affidavits or other sources of evidence that set forth specific facts showing that there is a genuine issue for trial." *Devereaux*, 263 F.3d at 1076 (cleaned up). If the nonmoving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 322–23.

In ruling on a motion for summary judgment, the court does not make credibility determinations or weigh conflicting evidence. Instead, it views the evidence in the light most favorable to the nonmoving party and draws all factual inferences in the nonmoving party's favor. *E.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991). In ruling on a summary-judgment motion, the court "need consider only the cited materials." Fed. R. Civ. P. 56(c)(3). A "district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001). In other words, "whatever establishes a genuine issue of fact must both be in the district court file and set forth in the response." *Id.* at 1029; *see Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) ("[I]t is not our task, or that of the district court, to scour the record in search of a genuine issue of triable fact. We

rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.").

## ANALYSIS

Rokid's motion is granted in part and denied in part. The request for terminating sanctions is denied. The request for sanctions on Rokid's counterclaims is granted under Rule 37(e), but default judgment is not warranted. The request for additional discovery is granted.

Mr. Fu's motion for summary judgment is denied. There are genuine disputes of material fact as to whether Rokid had a protectable trade secret. The remaining issues are denied without prejudice under Rule 56(d): they are not ripe because discovery is needed.

**1. Sanctions**

**1.1   Terminating Sanctions on Mr. Fu's Claims**

The first issue is whether Rokid is entitled to terminating sanctions. Terminating sanctions are not warranted.

Rokid argues that Mr. Fu destroyed three categories of ESI related to his affirmative case: (1) communications with third-party overseas vendors about Russian transactions, (2) personal communications that may pertain to his sickness or work performance, and (3) metadata from screenshots that Mr. Fu seeks to use in his affirmative case.

**1.1.1   Third-party communications**

Rokid is not entitled to sanctions because the threshold requirements of Rule 37(e) are not met.

First, Rule 37(e) applies only to ESI that should have been preserved. Rokid argues that Mr. Fu may have erased messages with overseas clients related to the Russian transactions. It speculates that the messages could have indicated whether Mr. Fu had a reasonable basis to think that the transactions were illegal. But Rokid has not established that Mr. Fu erased messages with overseas clients related to the Russian transactions, much less messages evidencing the reasonableness of his belief. Thus, there is no basis to conclude that such evidence should have been preserved.

Second, Rule 37(e) requires that the destroyed ESI cannot be recovered from other sources. It is not clear from the parties' briefing whether Rokid attempted to recover the alleged messages from the recipients, many of whom are purportedly Rokid's customers.

Thus, Rule 37(e) does not apply to the alleged messages.

### 1.1.2  Personal Conversations

The threshold requirements of Rule 37(e) are not met.

Rule 37(e) applies only to ESI that should have been preserved. Rokid argues that Mr. Fu's phone likely contained personal conversations with friends or family. Rokid speculates that one of these candid conversations could undermine Mr. Fu's claims about his disability or work performance. The court separately granted Rokid's motion for summary judgment on the disability claim. Concerning work performance, Mr. Fu undisputedly received an "A" rating on his January 2023 performance evaluation, so the relevance of any such conversations is attenuated.[12] In any event, there is no evidence that relevant conversations occurred, and thus no evidence that Mr. Fu violated his preservation obligation. *Cf. Leon*, 464 F.3d at 959 (affirming sanctions where destroyed laptop was the subject of preservation notice and spoliating party admitted to deleting relevant personal data). Tellingly, it appears that Rokid did not specifically request these personal conversations in discovery and raised the issue only after Mr. Fu admitted to erasing his phone.

Rule 37(e) also requires that the destroyed ESI cannot be recovered from other sources. It does not appear that Rokid attempted to recover any such conversations from other sources like Mr. Fu's friends or family.

Thus, Rule 37(e) does not apply to the alleged personal conversations.

### 1.1.3  Metadata

The threshold requirements are met. Mr. Fu took screenshots to preserve evidence for this litigation. By relying on the screenshots, Mr. Fu put them at issue. Thus, the associated metadata — potentially related to their authenticity and relevance — should have been preserved. The metadata cannot be recovered from other sources.

---

[12] Guan Dep. – ECF No. 89-7 at 10.

Rule 37(e) permits sanctions if the ESI was destroyed with the intent to prevent the other party from using it in the litigation. Here, there is inadequate evidence to conclude that Mr. Fu erased the metadata for that purpose. Mr. Fu is not a lawyer or an ESI specialist. It appears that he attempted to preserve evidence via screenshot and did not think to preserve the metadata. There is not evidence that Mr. Fu selectively preserved metadata.

Thus, sanctions are not warranted. At trial, counsel for Rokid can discuss the missing metadata to the extent that it is otherwise relevant.

### 1.2   Default Judgment on Rokid's Claims

The next issue is whether Rokid should receive sanctions on its counterclaims under Rule 37(e), Rule 37(b)(2), or the court's inherent authority.

#### 1.2.1   Inherent Authority

Rokid asks the court to invoke both Rule 37(e) and its inherent authority.[13] But as Rokid concedes in a footnote, inherent authority is unavailable where Rule 37(e) is implicated.[14] *Gregory v. Montana*, 118 F.4th 1069, 1080 (9th Cir. 2024).

The request is denied.

#### 1.2.2   Rule 37(b)(2): Violations of Discovery Order

Rokid contends that Mr. Fu spoliated evidence after the court's discovery order at ECF No. 80. Rokid's argument hinges on the theory that, up until one week before his second deposition, Mr. Fu was deleting relevant messages with Rokid's customers.[15] As support, Rokid cites an exchange from Mr. Fu's deposition. With the pending question re-inserted, the testimony indicates that conversations happened a week before the deposition, not deletions:

> Q. Other than cleaning those large files, did you preserve any—did you preserve all conversations with [competitor]?

---

[13] Mot. – ECF No. 113 at 22.

[14] *Id.* at 15 n.3.

[15] *Id.* at 26.

A. I believe I didn't complete all of the conversations. For sure, I have the most recent conversations, but the older ones, I'm not sure I have those.

Q. . . . My question is, when did the recent conversations take place, versus when did the old conversations take place?

A. Oh, the most recent ones happened last week.[16]

Notably, these conversations post-date Mr. Fu's destruction of his old phone. Rokid's reply brief suggests that these conversations, if they still exist, have not been produced. If so, discovery is the appropriate remedy, not sanctions. *See infra* Section 2.

### 1.2.3   Rule 37(e): Destruction of ESI

Rokid argues that Mr. Fu destroyed post-termination communications with Rokid customers relevant to its trade-secret and defamation claims. Sanctions are warranted.

#### 1.2.3.1   Intent

Rule 37(e)(2) permits sanctions where the spoliating party destroyed ESI with "the intent to deprive another party of the information's use in the litigation." Here, there is compelling evidence that Mr. Fu destroyed information to strengthen his defense.

Mr. Fu's intent is shown by selective preservation. Mr. Fu contends that he preserved all relevant conversations with Rokid customers by taking screenshots. But in one instance, Rokid obtained the same conversation from its customer. The complete conversation shows that Mr. Fu failed to capture earlier messages that appear to solicit business: "We can have lots of fun together . . . . There are so many better products coming out."[17] In other instances, Mr. Fu produced multiple screenshots of the same conversation. The screenshots were roughly contemporaneous — as shown by the clock and battery life — yet show different messages. In one conversation, Mr. Fu took a screenshot, deleted messages accusing Rokid of lying, then took a second screenshot.[18]

---

[16] Fu. Dep. – ECF No. 112-2 at 123.
[17] Fu Messages – ECF No. 113-19 at 2.
[18] Fu Messages – ECF No. 113-10 at 3.

In other conversations, the screenshots reveal that messages were deleted but the content is not shown.[19]

The plaintiff's explanations are unpersuasive. During his deposition, Mr. Fu blamed an auto-delete function (purportedly activated by the recipient) that erased some but not all messages.[20] He claimed that two screenshots reflect multiple conversations from weeks apart, but with identical messages sent at the exact same time of day.[21] And Mr. Fu could not reconcile his explanation with the fact that the screenshots themselves were taken at roughly the same time of day.[22]

Plaintiff's counsel argues that Mr. Fu would not have produced multiple screenshots of the same conversation if his intent was to deceive. Regardless of why the first-captured screenshots were produced, the discrepancies indicate that Mr. Fu's intent was to manipulate conversations during the preservation process. It is fair to question whether the first-captured screenshots are accurate and if they were created and provided in all instances.

In sum, Mr. Fu manipulated evidence with the intent to deprive Rokid of its use in the litigation.

### 1.2.3.2  Preservation Obligation

The issue is whether the messages should have been preserved. The answer is yes. Unlike the conversations discussed above, here, there is direct evidence that relevant communications existed. Mr. Fu admitted that he communicated with Rokid customers and other players in the augmented-reality industry. Messages with Rokid customers were specifically enumerated in Rokid's preservation notice, and messages with others could be related to Rokid's defamation claims. Mr. Fu received the preservation notice, reviewed it with his counsel, but still failed to preserve the entirety of the communications.

Thus, this element is met.

---

[19] *Id.* at 3.

[20] Fu Dep. – ECF No. 112-2 at 14.

[21] *Id.* at 29.

[22] *Id.* at 28.

### 1.2.3.3 Recoverable from Other Sources

Thus, the availability of sanctions turns on whether the lost ESI is recoverable from other sources. The record indicates, and oral argument confirmed, that at least some data is not recoverable.

First, Mr. Fu does not have the messages. He testified at his deposition that he did not create a backup before erasing his phone and was unable to recover messages by signing in on his new device. His counsel represented that Mr. Fu also contacted the messaging companies but still cannot recover the data.

Second, Rokid confirmed that it does not have the messages. Mr. Fu sent the messages at issue after he was fired and did not use a company messaging platform (i.e., Ding Talk).

Third, at least as a practical matter, the messages cannot be recovered from the recipients. Even if they retained the messages, some of the recipients are beyond the court's subpoena power (i.e., in Brazil, Chile) and it is too late in the game for discovery under the Hague convention. Other recipients are Rokid customers. But Rokid need not ask its customers for evidence of misappropriated trade secrets and defamation (risking further harm to the relationship) to cure Mr. Fu's spoliation.

*   *   *

In sum, at least for some ESI, the requirements of Rule 37(e) are met.

### 1.2.3.4 Remedy

Rule 37(e) says that after finding intent to deprive, the court may (1) presume that the lost information was unfavorable to the party, (2) instruct the jury that it may or must presume the information was unfavorable to the party, or (3) dismiss the action or enter a default judgment. Unlike Rule 37(e)(1), Rule 37(e)(2) does not require the court to award the least severe sanction. Nor does the text of the rule provide guidance on which sanction is appropriate.

More generally, where spoliation is found, courts often consider three factors to determine whether and what type of sanctions to issue: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3)

whether there is a lesser sanction that will avoid substantial unfairness to the opposing party." *Nursing Home Pension Fund v. Oracle Corp.*, 254 F.R.D. 559, 563 (N.D. Cal. 2008).

Here, a permissive adverse-inference instruction is appropriate. As discussed above, the court is satisfied that the destruction of ESI was performed with the intent to prevent its use in the litigation. That said, credibility is generally an issue for the jury and Mr. Fu is entitled to present his version of the story at trial. After all, if the court's finding on intent were dispositive, then Rule 37(e)(2) would not allow for permissive jury instructions.

More generally, an adverse-inference instruction addresses Mr. Fu's fault and the prejudice from the lost evidence while avoiding substantial unfairness to Rokid by allowing it to argue that Mr. Fu destroyed ESI because it was unfavorable to his litigation position.

The parties will submit proposed permissive adverse-inference instructions during the pre-trial process.

### 1.3   Fees

Rokid wants fees due to spoliation and multiplication of the proceedings. The request is denied based on the nature of the spoliation and the lack of bad-faith conduct by counsel.

#### 1.3.1   Fees for ESI Spoliation

Rokid seeks fees against Mr. Fu and his counsel for destruction of evidence. The threshold issue is whether fees are available for the destruction of ESI. They are not, because Rule 37(e) does not provide for fees.

In *Gregory*, the Court of Appeals for the Ninth Circuit held that a district court cannot invoke its inherent authority where Rule 37(e) is implicated. 118 F.4th at 1080. Instead, the district court must adhere to the language of the rule. *Id.*

Rule 37(e) specifies three potential remedies. The court may (1) presume that the lost information was unfavorable to the party, (2) instruct the jury that it may or must presume the information was unfavorable to the party, or (3) dismiss the action or enter a default judgment. Unlike other provisions of Rule 37, fees are not mentioned in Rule 37(e).

Therefore, fees are not available.[23]

### 1.3.2 Multiplying proceedings

The issue is whether counsel engaged in bad-faith conduct, which is a threshold requirement for fees under section 1927. *Kohler*, 779 F.3d at 1020.

Here, counsel has not engaged in bad-faith litigation conduct.[24] Under the circumstances, two speaking objections and objections to interrogatories are not sanctionable. Nor was the motion for summary judgment frivolous because, as discussed below, Rokid's 30(b)(6) witness on trade secrets was unable to identify acts of misappropriation or damages. Counsel represents — and the court is satisfied — that counsel was not involved in spoliation or selective preservation of evidence, and any deposition testimony from Mr. Fu on the topic is ambiguous at best.

## 2. Counterclaim Discovery Request

The issue is whether the court should allow additional discovery on Rokid's counterclaims. Additional discovery is appropriate because Mr. Fu's deposition testimony suggests that prior responses are not complete.

Mr. Fu is ordered to supplement his responses to interrogatory 17 and requests for production 55 and 56. Mr. Fu will also submit a declaration explaining how he identified and preserved responsive materials. After the production is complete, Rokid may request an additional deposition if it is necessary.

## 3. Summary Judgment

The plaintiff moves for summary judgment on Rokid's trade-secret and defamation counterclaims. The motion is denied for the reasons set forth below.

---

[23] Rokid's authorities supporting fees predate the *Gregory* decision and involve fees pursuant to both Rule 37 and the court's inherent authority.

[24] As explained in ECF No. 80, Rokid may seek reasonable expenses and fees for the second deposition of Mr. Fu.

### 3.1 Trade-Secret Claims

The plaintiff argues that he is entitle to summary judgment on three grounds: (1) Rokid has not identified a protectable trade secret; (2) Rokid has not presented evidence of misappropriation; and (3) Rokid cannot establish damages.

#### 3.1.1 Trade-Secret Protection

The first issue is whether there is a genuine dispute of material fact that the information identified by Rokid constitutes trade secrets. There is. Evidence supports that the CRM database and internal communications constituted more than generic customer lists.

A trade secret is information that derives independent economic value from not being generally known and is subject to reasonable efforts to maintain its secrecy. Cal. Civ. Code § 3426.1(d). Thus, a generic customer list with readily ascertainable contact information is not a trade secret. *Matthews Paint Co. v. Seaside Paint & Lacquer Co.*, 148 Cal. App. 2d 168, 172–174 (1957). Conversely, a list including valuable and non-public information — such as customers' past orders, special needs, or preferences — is protectable. *Id.*

Evidence supports that the information identified by Rokid — namely, its CRM database and related communications — derives economic value from not being generally known and is subject to reasonable protections. While the plaintiff characterizes the database as a generic customer list, Rokid presents evidence that it contains detailed, non-public information with economic value such as the phase of ongoing projects, customers' needs and preferences, and potential business leads.[25] Concerning reasonable measures, there is evidence on both sides. Mr. Fu argues that allowing employees to access information while working from home or using personal devices was unreasonable.[26] On the other hand, Rokid's director testified that the database and company emails were protected by NDA agreements and passwords, and that access was limited to high-level employees.[27]

---

[25] Guan Dep. – ECF No. 87-2 at 10–11, 15.
[26] Mot. – ECF No. 60 at 16.
[27] Guan Dep. – ECF No. 87-2 at 10–11, 15.

Thus, there is a genuine dispute of material fact as to whether Rokid had a protectable trade secret.

### 3.1.2   Misappropriation

The issue is whether there is a genuine dispute of material fact on misappropriation. The issue is not ripe.

To prevail on its trade-secret claims, Rokid must show misappropriation, which includes unauthorized use of the trade secret. Cal. Civ. Code § 3426.1(b)(2); 18 U.S.C. § 1839(5)(B).

The parties' dispute turns on what information Mr. Fu used after his termination. Rokid argues that Mr. Fu used Rokid information to contact customers and solicit business. The plaintiff responds that Rokid has not identified any evidence that Mr. Fu used the non-generic, protectable portions of the customer lists to solicit business.

In view of spoliated evidence and ordered discovery, this portion of the motion is no longer ripe for adjudication and is denied without prejudice.

### 3.1.3   Damages

The issue is whether there is a genuine dispute of material fact that Rokid suffered harm. The issue is not ripe.

A trade-secret plaintiff must show that it was harmed by the misappropriation. Cal. Civ. Code § 3426.1(b).

The parties dispute whether Rokid can establish harm. The plaintiff argues that summary judgment is warranted because Rokid's 30(b)(6) designee for misappropriation was unable to identify any customers lost due to Mr. Fu's alleged conduct. Rokid responds that other theories of damages are available (i.e., unjust enrichment, reasonable royalty) and that additional discovery is necessary.

Because of the ordered discovery, this portion of the motion is no longer ripe for adjudication and is denied without prejudice.

*   *   *

In sum, the first ground is denied because there is a genuine dispute of material fact as to whether Rokid had a protectable trade secret. The remaining grounds are denied without prejudice.

### 3.2 Defamatory Statements

The plaintiff argues that Rokid has not identified any statement that is (1) defamatory on its face, (2) not an opinion, and (3) caused harm to Rokid.

Mr. Fu spoliated evidence relating to the defamation claim and may be in possession of additional responsive communications. Thus, these issues are not ripe, and the motion is denied without prejudice.

### CONCLUSION

Rokid's motion for sanctions is denied with respect to Mr. Fu's affirmative claims. With respect to Rokid's counterclaims, Mr. Fu spoliated ESI. The issue of any adverse inference instruction will be addressed during the pre-trial process.

Concerning Mr. Fu's motion for summary judgment, there is a question of material fact as to whether Rokid had a protectable trade secret. The remaining grounds are denied under Rule 56(d).

At the hearing, the parties requested a referral to a settlement judge. They will confer and submit any requests by February 14, 2025. By February 21, the parties will confer on and submit a proposed schedule for: supplemental discovery, subsequent dispositive motions, trial, and ADR.

**IT IS SO ORDERED.**

Dated: February 19, 2025

LAUREL BEELER
United States Magistrate Judge